IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Michelle Collins, ) | |
| ) | Civil Action No. 6:10-288-RBH-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits under Title XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed application for supplemental security income ("SSI") benefits on July 17, 2006, alleging that she became unable to work on January 1, 2006. The application was denied initially and on reconsideration by the Social Security Administration. On February 9, 2007, the plaintiff requested a hearing. The administrative law judge, before whom the plaintiff, her attorney, and a vocational expert appeared on April 27, 2009,

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

considered the case *de novo*, and on June 4, 2009, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on December 8, 2009. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)    The claimant has not engaged in substantial gainful activity since July 17, 2006, the application date (20 CFR 416.971 *et seq*.).
>
> (2)    The claimant has the following severe impairments: chronic hiccups, anxiety, depression, and fibromyalgia.
>
> (3)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).
>
> (4)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work with limitations involving avoiding the use of moving machinery. The claimant should perform no work involving unprotected heights. The claimant can perform repetitive tasks and should have only occasional contact with the public.
>
> (5)    The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> (6)    The claimant was born on December 9, 1972 and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (20 CFR 416.963).
>
> (7)    The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
>
> (8)    Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 416.969, 419.969a and 419.968(d)).

> (9) The claimant has not been under a disability, as defined in the Social Security Act, since July 17, 2006, the date the application was filed (20 CFR 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

***Medical Evidence***

*Between the Lakes Family Practice*

The plaintiff was seen in March 2006 to establish care. She complained of constant hiccups that stopped for "several hours" after burping. Dr. Smith noted the plaintiff's hiccups improved with Zantac and that she was in no apparent distress (Tr. 282).

The following month, the plaintiff's medication was adjusted to Pepcid (Tr. 91). In May, the plaintiff indicated Thorazine helped control her hiccups during the day, but not at night, and she was given a prescription for "low dose" Valium for panic attacks (Tr. 289). In June, her dosages of Thorazine and Valium were increased (Tr. 288).

On September 26, 2006, Tracie Smith, N.P., completed a mental status evaluation form, in which she opined that the plaintiff's thought process was slowed; thought content was appropriate; mood/affect was worried/anxious and depressed; attention/concentration were adequate; and memory was adequate. Nurse Smith separately indicated that "at times" the plaintiff found it hard to concentrate (Tr. 303).

On February 15, 2007, Dr. Smith completed a "Questionnaire" form at the request of the plaintiff's counsel. He stated the plaintiff was unable to perform even sedentary work; would miss more than three days of work each month; would require breaks of "significantly" more than an hour each day; would need to elevate her legs for

5

"significantly more than an hour" each day; and would have significant problems with attention and concentration (Tr. 357-58).

In April 2008, Dr. Smith indicated in a letter that the plaintiff suffered from hepatitis C, a diagnosis of fibromyalgia, anxiety, and intractable hiccups. He opined that she would be unable to perform any work that involved standing or walking, or seated work that required more than occasional use of the hands or arms. He also indicated that the plaintiff's anxiety would require her to miss several days of work each month, and that her hiccups would interfere with performing any type of clerical work (Tr. 378-79).[2]

The plaintiff returned to Dr. Smith on August 29, 2008, after not being seen by him since August 2007. Although the plaintiff complained her hiccups were worsening, she apparently presented asking Dr. Smith to complete some paperwork in connection with her SSI application (Tr. 434).

In late October 2008[3], Dr. Daniel Smith completed a "Mental Residual Functional Capacity Assessment" form, in which he indicated the plaintiff was moderately or markedly limited in almost all areas of mental functioning (Tr. 180-82).

On February 19, 2009, Dr. Smith completed a "Medical Assessment of Ability to Sustain Work-Related Activities (Mental)" form. He indicated the plaintiff could perform the following activities as a percentage of an eight-hour day: follow work rules 90 percent of the time; relate to co-workers 90 percent of the time; deal with the public 70 percent of

---

[2]In a note dated February 19, 2009, Dr. Smith additionally opined that the plaintiff would be able to stand for no more than two hours a day; could not use her arms or hands to work for more than 10 minutes at a time; and would need frequent unscheduled breaks to accommodate her hiccup attacks, which "occur at unpredictable intervals and last for about fifteen minutes at a time and occur about two to three times per day" (Tr. 447). He also said her hiccup attacks "usually" were accompanied by anxiety attacks, and her prescribed Valium made her sleepy "so she might not be able to return back to work at all once she has had one of these hiccuping spells" (Tr. 447).

[3]The date on the form is difficult to read. However, the form was created on October 20, 2008, and faxed on November 4, 2008, indicating the opinion must have been completed sometime between those two dates (*see* Tr. 180-82).

the time; use judgment 90 percent of the time; interact with supervisors 80 percent of the time; deal with ordinary work stresses 60 percent of the time; function independently 80 percent of the time; and maintain attention/concentration 40 percent of the time. He also stated that the plaintiff could understand, remember, and carry out simple instructions 100 percent of the time, but only do so with detailed or complex instructions 40 percent of the time. In addition, he indicated the plaintiff had no limitations in maintaining personal appearance, behaving in an emotionally stable manner, relating predictably in social situations, or demonstrating reliability (Tr. 445-46).

*Oconee Memorial Hospital*

On May 1, 2006, the plaintiff underwent a cholecystectomy (gallbladder removal) (Tr. 223-224). She was seen for a follow-up visit five days later, where it was noted she was "resuming many normal activities" (Tr. 240). The following month, the plaintiff, then 33, presented to the emergency department complaining a 2½-year history of hiccups. An EKG was normal, and she was administered an IV that improved her symptoms (Tr. 231-32).

In February 2007, the plaintiff was seen with complaints of a hiatal hernia with "mild" reflux, including bloating, chest discomfort, hiccups, and burping. She reported her symptoms were exacerbated by lying flat and eating spicy foods and that her hiccups were worse at night and early in the morning. Dr. Bradford A. Tyler noted her CT scans had been normal, recommended medication, and stated there was no indication that surgical intervention was warranted (Tr. 365-66; *see* Tr. 367-68).

The plaintiff was taken to the emergency department in March 2009 after overdosing on prescribed medication following an argument with her boyfriend, an action which she "immediately regretted." Following treatment, she denied any intention of

7

committing suicide, and was discharged since it was determined she "did not require impatient psychiatric treatment" (Tr. 459-60).

*Laurel Medical Group*

In July 2006, the plaintiff was seen by Dr. Talley Parker, who noted the plaintiff was positive for hepatitis C and had a history of IV drug use and used to be a "heavy drinker." He also indicated the plaintiff had no history of arthritis, abdominal pain, fatigue, nausea, or vomiting, and her hiccups were "controlled" with medication, although she complained of experiencing panic attacks about twice per day. He noted that the hepatitis C diagnosis needed to be confirmed with further blood tests, and instructed the plaintiff to return in one month (Tr. 269-70). There is no indication in the record that she ever did so.[4]

*Spurgeon N. Cole, Ph.D.*

The plaintiff underwent a consultative psychological evaluation conducted by Dr. Cole in October 2006. At that time, he noted that the plaintiff made eye contact and related well; volunteered information; had satisfactory memory for recent and remote events; and showed no evidence of loss of cognitive functions. She told Dr. Cole she had panic attacks at night due to hiccups, but acknowledged that she had no panic attacks during the day. Dr. Cole noted the plaintiff did not appear to be depressed or unduly anxious, and he concluded she had an adjustment disorder with anxious mood (Tr. 307-11).

---

[4]Dr. Parker referred the plaintiff to Dr. Joseph G. Edelson (Tr. 422-423). Dr. Edelson saw the plaintiff only once, and there is no indication she returned after being instructed to present for blood tests.

8

*State Agency*

Lisa Varner, Ph.D., a State agency medical consultant, completed "Psychiatric Review Technique" and "Mental Residual Functional Capacity Assessment" forms in October 2006. Based on her review of the evidence of record, Dr. Varner concluded the plaintiff's mental limitations were either not significantly limited or only moderately limited in all areas of mental functioning. She opined that the plaintiff's impairments would not preclude the performance of simple, repetitive work in a setting that did not require on going interaction with the public (Tr. 312-25, 326-29).

Dr. William Crosby, a State agency medical consultant, completed a "Physical Residual Functional Capacity Assessment" form in January 2007. Based on his review of the evidence of record, Dr. Crosby concluded the plaintiff could occasionally lift and/or carry up to 50 pounds; frequently lift and/or carry up to 25 pounds; and stand and/or walk for about six hours (Tr. 349-56).

### *Hearing Testimony*

Born on December 9, 1972, the plaintiff testified she was 36 years old at the time of her hearing, separated from her husband, and lived with her three sons in her mother's home (Tr. 30-31). She said her only income was food stamps (Tr. 32). She said she was unable to work due to chronic hiccups, which she said caused her to become sick four times per day (Tr. 33-34). She additionally indicated she had hepatitis C and fibromyalgia (Tr. 35). She said fibromyalgia caused her to experience significant pain, but acknowledged she had "no problems with the hepatitis C" (Tr. 36). She also indicated she had experienced panic attacks, anxiety and depression for the preceding year (Tr. 37), and said she had four panic attacks per day (Tr. 40). She testified she could walk for five to 20 minutes, sit for 15 minutes, and lift 10 pounds (Tr. 43-44).

Carroll Crawford appeared at the administrative hearing and testified as a vocational expert (Tr. 47-55). Mr. Crawford testified that the plaintiff's past work as a retail clerk had been semiskilled and of light exertion; as a waitress had been semi-skilled and of light exertion; as an industrial cleaner had been unskilled and of medium exertion; and as a plant nursery worker had been semi-skilled and of medium exertion (Tr. 49). When the ALJ asked if a hypothetical person who could perform light work but needed to avoid concentrated use of moving machinery and unprotected heights, who was limited to simple routine tasks with only occasional interaction with the public, could perform the plaintiff's past work, Mr. Crawford said they could not (Tr. 49). However, he testified that such a person could perform other work, such as garment sorter, agricultural sorter, or office helper (Tr. 49).

## **ANALYSIS**

The plaintiff alleges disability commencing January 1, 2006, when she was 33 years old. The plaintiff was 36 years old on the date of the hearing. The plaintiff completed the tenth grade and had past relevant work as a retail clerk, waitress, and cleaner (Tr. 70). The ALJ determined that the plaintiff had the following severe impairments: chronic hiccups, anxiety, depression, and fibromyalgia. The ALJ found that the plaintiff had the residual functional capacity ("RFC") to perform light work with limitations involving avoiding the use of moving machinery and no work involving unprotected heights. He further found the plaintiff could perform repetitive tasks but should have only occasional contact with the public (Tr. 67). The ALJ determined that the plaintiff was unable to perform any past relevant work, but she could perform such jobs as garment sorter and office helper (Tr. 71). The plaintiff argues that the ALJ's decision is not supported by substantial evidence and the ALJ erred by: (1) improperly evaluating the opinion of her treating

10

physician, Dr. Daniel Smith; (2) failing to consider all of her severe impairments; and (3) failing to properly assess her credibility and subjective allegations of pain.

### *Treating Physician*

The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list:  (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion.  20 C.F.R. § 416.927(d)(2)-(5).  *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005).  However, statements that a patient is "disabled," "unable to work," meets the Listing requirements, or similar assertions are not medical opinions.  These are administrative findings reserved for the Commissioner's determination.  SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case.  *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  Social Security Ruling 96-2p, 1996 WL 374188, requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion.  *Id.* at *5.  As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927].  In many cases,

> a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

The ALJ found as follows with regard to the opinions of treating physician Dr. Smith:

> I did not grant any weight to the opinion of Dr. Smith. I conclude that Dr. Smith's opinions were inconsistent with the majority of the medical evidence. Dr. Smith opined that the claimant could not even perform sedentary work and that she would have difficulties with concentrating. Yet, the claimant's psychological evaluation revealed that the claimant had not difficulties with concentration or even in attending to her personal needs. I conclude that Dr. Smith's opinion did not preclude the ability to perform light work with the aforementioned restrictions.

(Tr. 69).

Dr. Smith opined that the plaintiff's mental functioning was moderately or markedly limited in almost all areas (Tr. 180-82). As argued by the Commissioner, the ALJ's determination that Dr. Smith's opinion was unsupported by the evidence of record is supported by the opinion of Dr. Cole, who performed a consultative evaluation in October 2006 (Tr. 307-311). Dr. Cole noted the plaintiff made good eye contact and related well; had satisfactory memory for recent and remote events; and showed no evidence of loss of cognitive functions (Tr. 308). He also noted that the plaintiff acknowledged that she had no panic attacks during the day (Tr. 308). In addition, state agency reviewing physician Dr. Varner concluded the plaintiff's mental limitations were not significant (Tr. 326-327) and opined that the plaintiff retained the mental RFC to perform simple, repetitive work in a setting that did not require on going interaction with the public (Tr. 328), which is the same limitation included by the ALJ in his hypothetical question posed to the vocational expert (Tr. 49).

As to the plaintiff's physical limitations, Dr. Smith opined in February 2007 that the plaintiff was unable to perform even sedentary work; would miss more than three days of work each month; would require breaks of "significantly" more than an hour each day; would need to elevate her legs for "significantly more than an hour" each day; and would have significant problems with attention and concentration (Tr. 357-58). In April 2008, Dr. Smith opined that the plaintiff would be unable to perform any work that involved standing or walking, or seated work that required more than occasional use of the hands or arms (Tr. 378-379). In a note dated February 19, 2009, Dr. Smith additionally opined that the plaintiff would be able to stand for no more than two hours a day; could not use her arms or hands to work for more than 10 minutes at a time; and would need frequent unscheduled breaks to accommodate her hiccup attacks, which "occur at unpredictable intervals and last for about fifteen minutes at a time and occur about two to three times per day" (Tr. 447).

As argued by the Commissioner, Dr. Smith's opinions regarding the plaintiff's physical limitations were likewise unsupported by the record as a whole and were reasonably discounted by the ALJ. Dr. Smith's own treatment records fail to document the plaintiff ever complained of experiencing the extreme functional limitations cited by him, nor is there any evidence that he placed any restrictions on her activities. In March 2006, for example, Dr. Smith noted that the plaintiff's hiccups stopped for several hours at a time by burping, and that her condition was improved with medication (Tr. 282). In July 2006, Dr. Parker indicated that the plaintiff's hiccups were "controlled" with medication (Tr. 269). In October 2006, the plaintiff informed Dr. Cole that she had no panic attacks at all during the day (Tr. 308). While she bore the diagnoses of fibromyalgia and hepatitis C, there is no credible evidence that she experienced significant functional limitations as a result of these impairments. In fact, the plaintiff admitted that she had "no problems with the hepatitis" at the time of her administrative hearing (Tr. 36). Furthermore, the plaintiff alleges disability commencing January 1, 2006, and her application for benefits was filed on August 24, 2006

(Tr. 93-98). All of Dr. Smith's opinions were issued after that date, and he expressed no opinion as to what the plaintiff's RFC may have been on or before that date. Importantly, Dr. Smith did not see the plaintiff between August 2007 and August 2008 (Tr. 434), indicating that the April 2008 assessment was prepared without actually examining the plaintiff.

Based upon the foregoing, the undersigned finds that this allegation of error is without merit.

### *Severe Impairments*

The plaintiff further argues that the ALJ erred by finding that her hepatitis C was a non-severe impairment (*see* Tr. 69). "'[A]n impairment can be considered as "not severe" only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (citations omitted) (emphasis in original); *see* 20 C.F.R. §§ 404.1521, 416.921; *see also* SSR 96-3p, 1996 WL 374181.

As argued by the Commissioner, while the plaintiff's medical records carry the diagnosis of hepatitis C, the ALJ reasonably concluded that it was not a severe impairment because there was no evidence that it had any negative impact of the plaintiff's ability to perform work related activities. At her April 2009 administrative hearing, more than three years after her alleged onset of disability date, the plaintiff admitted she had "no problems" as a result of her hepatitis (Tr. 36). This fact, coupled with diagnostic studies that showed the plaintiff had "ample liver function" and her liver enzymes were only "slightly" elevated (Tr. 69, 378), support the ALJ's determination that the plaintiff's hepatitis did not significantly impact her ability to work.

The plaintiff further argues that while the ALJ correctly found that her anxiety and depression were severe impairments, the ALJ erred in finding that her only mental limitation was to have only occasional contact with the public (pl. brief at 32). However, the ALJ also found that the plaintiff would be limited to performing only simple repetitive tasks, i.e. unskilled work (Tr. 49-50, 67), a significant limitation given her vocational history of performing semi-skilled work in the past (Tr. 49).

The ALJ's finding is supported by substantial evidence. Dr. Cole noted the plaintiff had satisfactory memory and no evidence of loss of cognitive functioning (Tr. 307-311). *See Richardson v. Perales*, 402 U.S. 389, 402 (1971) (written report by a licensed physician who has examined the claimant may constitute substantial evidence). In addition, Dr. Varner, a state agency medical consultant, concluded the plaintiff's mental limitations were not significant (Tr. 326-27) and opined she retained the RFC to perform unskilled work that did not require on-going interaction with the public (Tr. 328). *See* Social Security Ruling (SSR) 96-6p (opinions of State agency medical consultants must be considered and weighed as those of highly qualified experts). The plaintiff argues that the ALJ did not mention Dr. Varner's report in his opinion, and thus this is a post-hoc rationalization. However, as pointed out by the Commissioner, the hypothetical question posed to the vocational expert mimics Dr. Varner's findings (Tr. 49). Based upon the foregoing, this court finds that the ALJ did not err in his findings with regard to the plaintiff's mental impairments.

### *Credibility*

Lastly, the plaintiff argues that the ALJ failed to properly evaluate her credibility. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

15

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4.

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)  the individual's daily activities;

(2)  the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)  factors that precipitate and aggravate the symptoms;

(4)  the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

> (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

The ALJ concluded that while the plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 69). In support of his finding, the ALJ discussed that plaintiff had never been hospitalized due to her alleged impairments; she cancelled or missed many medical appointments; she was able to concentrate during evaluations; her activities of daily living were within normal limits; and she had never received mental health treatment (Tr. 70). The plaintiff points out that she was hospitalized in March 2009 after a suicide attempt when she overdosed on prescribed medication (pl. reply at 6; *see* Tr. 459-60). However, that evidence was not before the ALJ, as it was provided to the Appeals Council after the date of the ALJ's decision (*see* Tr. 448). This court's review must include this evidence, which was incorporated by the Appeals Council into the administrative record, even though it was not seen, and therefore not evaluated by, the ALJ. *See Wilkins v. Secretary of Dep't of Health and Human Serv.*, 953 F.2d 93, 96 (4th Cir. 1991). This court finds that the ALJ's decision regarding the plaintiff's credibility is based upon substantial evidence even including this additional evidence of the plaintiff's hospitalization in March 2009.

**CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.


                                                                        s/Kevin F. McDonald
                                                                        United States Magistrate Judge

May 6, 2011

Greenville, South Carolina